## CHARLEY HAYES v. THE STATE.

### *No. 3909.   Decided November 28.*

1.  **Theft—Evidence—Recorded Brand.**—A brand for animals in order to be properly recorded, and in order that the record of the same may be admissible as evidence, must "designate the part of the animal upon which the same is to be placed." Penal Code, article 783. Where the record of a brand designated that the same should be placed on the left or right side of the animal, *held*, that this was a sufficient designation of the part of the animal upon which it was to be placed.

2.  **Circumstantial Evidence — Charge of the Court.** — The stolen animal, while running in its accustomed range, strayed into appellant's pasture, the fence of which was not cattle proof. Defendant knew the animal and also the brand. After the animal had been in his pasture about three months, it was driven up with other cattle defendant intended to ship and placed in his pen. The next morning one G., who had staid at defendant's house the night before, and was a stranger in the community, went to the pen with defendant, sold the cattle to him for $37, executed a bill of sale for same, and changed the marks and brands of same so as to obliterate the old ones. *Held*, that the court would not presume that there had been a previous taking by either of the parties, and that the conviction did not depend wholly upon circumstantial evidence, and that the court did not err in refusing to charge the law applicable to such evidence.

APPEAL from the District Court of Bosque.   Tried below before Hon. J. M. Hall.

Appellant was indicted, tried, and convicted for the theft of two head of cattle, the property of W. Caufield, his punishment being assessed at three years in the penitentiary. The facts of the case are sufficiently stated in the opinion.

The record of marks and brands spoken of in the opinion, and which was admitted in evidence over objection of defendant, was as follows, viz.:

"M. G. Tucker. *Mark*—Crop and underbit in the right and crop off left. *Brand*—T⅃ on left or right side of cattle and on left shoulder of horses. Recorded June 12, 1878.

"F. M. COLLIER, Co. Cl'k B. Co., Texas.

"By T. A. Collier, Deputy."

Which mark and brand had for a number of years been owned by W. Caufield, the alleged owner.

*Lockett & Kimball* and *Pearre & Boynton*, for appellant.

*H. S. Dillard*, County Attorney of Bosque County, and *R. H. Harrison*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of the theft of cattle alleged to be the property of W. Caufield.

Over the objection of appellant, the prosecution was permitted to introduce in evidence the record of the brand of M. G. Tucker. The objections stated are, that "said record was not the record brand of the alleged owner of the property, and because the record did not designate the particular part of the animal on which the brand was to be placed, but required it to be on the left or right side, and because it was shown to have been changed, the words 'or right side' being interlined with different colored ink." The proof is that the brand as adduced on the trial was originally the brand of said Tucker, and used by him until he sold it to W. Caufield, the alleged owner of the cattle charged in the indictment to have been stolen. Long anterior to the alleged theft, Caufield had been the owner of the brand and was the owner of the cattle in question.

The record designates the part of the animal upon which the brand should be placed as the "left or right side." This same question was before the court in Thompson's case, 25 Texas Court of Appeals, 161, and it was there held, that the part of the animal upon which the brand was to be placed was sufficiently designated in the record thereof, wherein it specified that it was to be placed on the "hip, thigh, and flank." The particular side of the animal in that case, as in this, was not specified.

In Harwell's case, 22 Texas Court of Appeals, 254, it was held that "The variance between the place of the brand on the animal and that designated in the record for said brand to be placed does not destroy the admissibility of the record as evidence of ownership. It merely impairs the probative force of the record. In such case, the record alone, unsupported by other evidence, is not sufficient proof of ownership. Priesmuth v. The State, 1 Texas Court of Appeals, 481."

Appellant contends that this is a case in which the State relies wholly upon circumstantial evidence to sustain the conviction, and therefore the court, failing to charge the law of that phase of the case, committed error of omission, which is fatal to the conviction. In other words, it is contended that the evidence does not show by direct and positive proof that the defendant was engaged in the original taking, but that fact must be inferred from the other facts adduced.

In substance the testimony disclosed that the alleged owner, Caufield, was the owner of the steers in question and the brand upon them, and that appellant knew both facts. He advised Hinton against estraying the red steer, assigning as his reason therefor that it was Caufield's and was in his brand. This was in the summer of 1888. Subsequently this steer found its way into appellant's pasture, a few miles from where it usually ran. For two or three months it ran in this pasture. The evidence is silent as to how it reached the pasture. The fencing in places was not good, and horsemen could ride under the wire inclosing it at one place, and stock could go in and out. Appellant knew of the presence of the steer in the pasture for some months, and so stated subsequent to his arrest for its theft. During the evening of January 6, 1889, appellant employed W. J. McFadden to meet him at his pasture on the following morning to assist him in driving some cattle from there to Kopperl, about forty miles distant. In pursusuance of this employment, McFadden went to the place designated at the time agreed upon. When he reached the pasture he found the cattle in a pen, those in controversy being among the number. Soon afterward appellant came, accompanied by a stranger to the witness, but who was introduced to him by appellant as W. G. Green. When they arrived at the pen Green sold the steers in question to appellant for $37. Appellant wrote a bill of sale from Green to himself, and Green signed it. As soon as the sale bill was executed, Green changed the marks and brands on the cattle, so as to obliterate the old ones. Appellant then drove the cattle to Kopperl, and Green disappeared, and at the date of the trial had not been seen or heard of by any of the witnesses.

In this connection appellant testified, that he "bought the steers from Green, who staid at my house in Valley Mills the night before, and we went up to the pasture where the steers were, and were in the pen, and I bought them. I asked Green about his right to sell the steers, and he stated they were a part of the steers bought by Livingston, of Hamilton County." The indictment alleged the possession in the owner, Caufield. Is this supported by the evidence in the case? If so, and the evidence further shows the taking to have occurred at the pen, where appellant purchased the cattle of Green, then this conviction is not dependent wholly upon circumstantial evidence. Cattle in their accustomed range are, in contemplation of law, in the possession of the owner. Willson's Crim. Stats., sec. 1273. Cattle may also be in the possession of any party who has the "actual control, care, and management of the property, whether the same be lawful or not." Willson's Crim. Stats., secs. 1272, 1273. If the "possession" be in some other party than the owner alleged in the indictment, that fact would constitute a variance necessarily fatal to the conviction.

Appellant testified to the taking of the steers by him at the pen, and claimed them under and by virtue of the purchase from Green at that time; the red steer being one of them. Was Green ever in possession of the "red steer" prior to the morning of the sale of same to appellant at the pen where the cattle were, and prior to the time he and appellant rode up to said pen? From the record this question must be answered in the negative. In fact, in so far as the evidence discloses, he was never in actual, manual possession of the steer until after the trade was consummated, execution of the bill of sale, and payment of the purchase money. As soon as the sale was complete, Green, with the assent of appellant, and assisted by one of appellant's employes, who acted by appellant's command, changed the ear marks on the steers and burnt out the brands on them. Appellant testified to the taking of the steers at the pen, but relies upon the purchase from Green to show his innocent connection therewith. If appellant believed Green had the authority to sell the cattle at the time of the purchase, or if Green had previously stolen the cattle, and appellant was not a party thereto as a principal offender, then he could not be held as a taker, fraudulently. But the evidence discloses no connection with the steer on the part of either Green or appellant prior to the time they went to the pen where the steer was, and it was evident from the testimony that both are guilty of taking the steer at said time and place. This is manifest from the testimony of appellant.

There is not a particle of evidence in this record, as we understand it, that the animals had been fraudulently taken by any one else, and put in the pen prior to this taking; and to ask us to presume so is to ask us to presume a fact which is not supported by any evidence in the record. On the other hand, if we are to indulge in presumptions, the presumption is much more reasonable, cogent, and probable that defendant himself had taken the animals and put them in the pen the evening prior to Green's appearance at his house the night before the sale. Defendant had an opportunity to explain the presence of the steers in question with his cattle in his pen while testifying as a witness in his own behalf, and did not do so, and his failure to do so is testimony of the strongest negative character against the theory we are asked to presume. We are not required to indulge in presumptions in the absence of an explanation of such fact.

We are of opinion, and we are most clearly warranted under the facts in holding, that the original taking occurred at the pen at the time of the alleged sale of the steers to appellant by Green, if in fact any such sale ever took place. This being true, the conviction in this case is not wholly dependent upon circumstantial evidence.

In cases of theft a fraudulent taking is the gist of the offense, and must be proved in order to authorize a conviction. The taking is the main fact in issue. This may be shown by direct or positive testimony, or

it may be inferred from the facts in evidence.   Where the main fact is not directly attested by any eye-witness, but is to be deduced or proved as a matter of inference from other facts in evidence, the case rests entirely upon circumstantial evidence.   Crowell v. The State, 24 Texas Ct. App., 409; Eckert v. The State, 9 Texas Ct. App., 105.

But when admitted by the party on the trial, or proved by eye-witnesses, it is not a case dependent wholly upon circumstantial evidence. The testimony of defendant himself manifests the fact that at least one of the animals in controversy was taken at the time and place of the alleged purchase, and not prior thereto, and we believe both are so proved to have been taken.   This is direct and positive testimony.   His evidence excludes the idea or conclusion that either himself or Green had been in possession of the "red steer" prior to that time, and this is one of the animals in controversy.   We are of opinion that the taking is proved by direct and positive testimony, and the court did not err in failing to charge the law applicable to circumstantial evidence.

The other questions raised by appellant are not deemed of sufficient importance to require discussion.   Finding no error requiring a reversal of the judgment, it is affirmed.

*Affirmed.*

Hurt, J., dissents.